## MATHEW TUCKER v. THE STATE.

No. 1065. Decided June 12, 1912.

Rehearing denied October 16, 1912.

### 1.—Misdemeanor Theft—Statement of Facts—Transcripts.

The several stenographic acts directing that the statement of facts shall be made out by the court stenographer and not copied in the record do not apply in misdemeanor cases; in appeals from such cases from the county court, the statement of facts must be filed within twenty days from the adjournment of the court, and that court has no power to grant a longer term, and the statement of facts must be copied in the record.

### 2.—Same—Certiorari.

Where the appellant has made an application for a writ of certiorari in proper form and due time to perfect the transcript of the record on appeal, the same will be granted.

### 3.—Same—Charge of Court—Alibi.

Where, upon trial of misdemeanor theft, the court charged on circumstantial evidence and reasonable doubt, and no special charge on alibi was requested, there was no error in the court's failure to charge on alibi. Following Jones v. State, 53 Texas Crim. Rep., 131, and other cases.

### 4.—Same—Requested Charge—Singling Out Facts.

Where, upon trial of misdemeanor theft, the court refused a special charge, which singled out a particular fact, there was no error.

### 5.—Same—Charge of Court—Evidence—Bill of Exceptions.

Where, upon trial of misdemeanor theft, the defendant himself introduced the testimony to which he afterwards objected when the State introduced the same testimony, there was no reversible error in the court's refusal to withdraw this testimony by a requested charge; besides, the bill of exceptions was defective in not showing that said testimony was inadmissible.

### 6.—Same—Evidence—Impeaching Testimony—Bill of Exceptions.

Upon trial of misdemeanor theft, after both parties had rested the case, there was no error in permitting testimony in rebuttal and for the purpose of impeaching defendant's witness' testimony; besides, the bill of exceptions was defective in not showing that the testimony was erroneously admitted, and the defendant accepted the bill as qualified by the court.

**7.—Same—Charge of Court—Bill of Exceptions.**

Where, upon trial of misdemeanor theft, it appeared on appeal that defendant had accepted the bill of exceptions as qualified by the court, there was no error under article 737, Code Criminal Procedure.

**8.—Same—Sufficiency of the Evidence.**

Where, upon trial of misdemeanor theft, the evidence, though conflicting, supported the conviction, there was no reversible error.

**9.—Same—Practice in the County Court—Statement of Facts.**

Where, upon appeal from a conviction of misdemeanor theft, the court awarded a certiorari to have certain defects in the statement of facts cured, this must not be considered as a precedent for the consideration of a statement of facts made up in violation of the rules on the subject of preparation of such statements.

Appeal from the County Court of Travis. Tried below before the Hon. R. E. White.

Appeal from a conviction of misdemeanor theft; penalty, a fine of $25 and ten days confinement in the county jail.

The opinion states the case.

*Dickens & Dickens,* for appellant.—On question of the court's power to modify requested charges: Coffman v. State, 62 Texas Crim. Rep., 88, 136 S. W. Rep., 779.

On question of the court's failure to charge on alibi: Cox v. State, 58 Texas Crim. Rep., 545, 126 S. W. Rep., 886; Hernandez v. State, 64 Texas Crim. Rep., 73, 141 S. W. Rep., 268.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, Judge.—By information the appellant was charged with the theft of seed cotton of the value of $10. He was tried and convicted in the County Court, and his penalty fixed at a fine of $25 and ten days imprisonment in the county jail.

The record in this case does not contain a statement of facts. There is filed, however, as a separate paper what purports to be a statement of facts. It contains about thirty pages. Many of the pages are not filled out. In one place there is pinned to about the middle of the page a whole page of closely written matter, pinned with an ordinary pin. At other places are pasted other pieces of paper on which there is additional typewritten matter. On other pages there are little loose slips written on in the same way which are pinned with an ordinary pin.

It has been the uniform holding of this court that in County Court criminal cases the several stenographic Acts of the Legislature directing that the statement of facts shall be made out by the court stenographer and not copied in the record, does not apply. On the other hand, it has been uniformly held by this court that statement of facts in misdemeanor cases must be filed within twenty days from the adjournment of the court, and that the court has no power to grant a

longer time, and that it is imperative that the statement of facts shall be copied in the record. And that unless this is done this court will not consider what purports to be a statement of facts entirely separate and distinct and not contained in the record certified by the clerk. In this case we, therefore, can not and do not consider the purported statement of facts.

None of the questions raised by the motion for a new trial or bills of exception in this case can be considered without a statement of facts.

The complaint and information being regular, and the charge of the court, verdict and judgment being in accordance therewith, the judgment will be affirmed.

*Affirmed.*

Davidson, Presiding Judge, absent.

## ON REHEARING.

### December 20, 1911.

PRENDERGAST, Judge.—The appellant has made two motions in this case. One to direct the clerk of this court to return to the clerk of the County Court of Travis County what purports to be the original statement of facts on the trial in the court below.

The other motion then is for a writ of certiorari to require the clerk of the court below to send up a certified copy of said purported statement of facts.

The appellant in his motion for rehearing claims that this court unjustly criticised him in its opinion heretofore rendered and that also some newspaper, in commenting thereon, criticised him. Of course, this court can not be responsible for what any newspaper may have said about him in connection with this or any other case. Certainly, this court in no way intended to criticise the appellant's attorney, and we think that the opinion delivered on the subject could not be construed as any criticism whatever upon him. Certainly none was intended by the court. The explanation made by him fully shows that he is not subject to any criticism.

This cause was originally submitted on March 15, 1911. It was briefed by appellant, the briefs filed January 24, 1911, and in his brief frequent reference is made to what purports to be the original statement of facts filed in this court. Of course, appellant's attorney knew that the said original paper was filed here, and this is not denied. On account of the large number of cases to be decided by this court, this case could not be reached nor decided until October 18, 1911.

All the members of the court are of the opinion that both of said motions of appellant should be denied for two reasons: First, because the purported statement of facts is in such condition, as shown· by the original here, that this court could not consider it even if a certified copy thereof was made by the clerk of the lower court and

sent back here; and also because the motions came entirely too late. Rule 2 of this court, 31 Texas Crim. Rep., 652; 102 Texas, p. xxxvi; 102 Texas, Rules 8 and 11, pp. xxvi and xxvii.

There might be a case when this court would permit a certiorari at such a late date—after deciding the case, and on a motion for rehearing, but this case does not present such a case.

Both motions will, therefore, be overruled.

*Overruled.*

ON REHEARING.

February 7, 1912.

PRENDERGAST, JUDGE.—In the consideration of this case heretofore there appeared pinned to the transcript of the record a certified copy by the clerk of the County Court of Travis County, whence this appeal, of the original complaint, the record, as originally made out, not containing this. The information the court had at the time, through the assistant attorney-general, was that this copy could be used as a part of the transcript instead of issuing a certiorari for that purpose and that this was by the consent of the appellant's attorney. Since then the appellant's attorney has made an affidavit that this is not the case; that he had never made any such agreement and did not consent that such paper so pinned on could be used. The State has made no motion for certiorari to correct the record in this or any other particular, but the appellant's attorney has made a motion for "a writ of certiorari commanding the clerk of the County Court of Travis County, Texas, to make out in accordance with law a complete and perfect transcript of the record in this cause as the same appears on file in his office and forward the same to this court without delay." As the matter is now presented to us, we grant this motion of the appellant and direct the clerk of this court to issue the proper writ in the premises. Under the circumstances, the previous opinions delivered in this case are here withdrawn, set aside and canceled and the cause will stand to await the proper return to the writ of certiorari.

*Certiorari granted.*

PRENDERGAST, JUDGE.—By proper information appellant was charged with the theft of two hundred pounds of seed cotton worth ten dollars, the property of Frank Hodge, was convicted and his punishment fixed at ten days in jail and $25 fine.

Only a brief statement of the evidence is necessary to understand the questions presented.

Frank Hodge testified that on September 30, 1910, he and certain cotton pickers for him had picked 1050 pounds of seed cotton and placed it, on the evening of that day, in his wagon in his field. When they got through picking that evening they put certain cotton sacks

in the wagon, covered up with seed cotton. One of these belonged to a certain negro woman and was by the witnesses clearly identified by various particulars fixing its description and identity. That some time that night a buggy with a horse hitched to it, shod in front, and a mule and a colt's tracks were discovered as having been driven from the place of appellant's father, who lived near the witness, into the witness' field and near where the wagon and his cotton were. That there were men's tracks back and forth from where this buggy and animals had been stopped, to his wagon and one special cotton sack and about 200 pounds of his cotton were stolen. A strange cotton sack was left in his wagon. It was also shown that appellant's father, with whom he lived, had a gray mare, a number of mules and a colt of said mare. There was much dispute in the testimony whether the front feet of appellant's father's mare was shod or not at that particular time. The testimony is sufficient for the jury to have believed that she was so shod, though perhaps a greater amount of the testimony was to the reverse. The next morning when said witness found some of his cotton gone and these tracks, he tracked the buggy and the animals back and forth from appellant's father's place into his field and down to an old empty house a few hundred yards from appellant's father's residence, and in said house he found signs showing where seed cotton had been put in and taken out of that house. There was also therein found this particular woman's sack who had picked for him the day before and which had been placed under the seed cotton in his wagon and left there the night before.

Jerre Hemphill testified that he, on the next morning after September 30, 1910, found these same buggy, horse, mule and colt's tracks and that they had been stopped near some cotton of his which was stolen that night; that he traced these tracks from where they entered the field of the witness Hodge and himself, and his testimony as to the identity, and these buggy, horse, mule and colt tracks went back and forth and to the said empty house on appellant's father's place, substantially as Hodge testified; that on the Friday night the cotton was stolen, he went by the Tuckers after night with others, going to a dance and that at that time he saw someone in appellant's father's lot with the said old gray mare.

Sam Brown testified that on that Friday night Watt Tucker, a brother of appellant, and himself were coming up the road, going to Williams to a supper, and when they got to the gate near appellant's father's house the appellant and Sam, appellant's brother, came up, going to their father's place; that Sam was in a buggy with three large sacks of cotton lying lengthwise; that appellant was on a mule and had a sack of cotton lying across the mule's back in front of him; that he opened the gate to let them pass through, which they did, and they went on in the direction of the Tucker's house; that Sam was driving the Tucker gray mare and her colt was following along with them.

Essie Keys testified that she and her husband picked cotton for the complaining witness, Frank Hodge, the day before the night of which the cotton was stolen. She testified that she picked in that certain peculiar sack and described it, which was identified as the sack by the other witnesses in which she picked that day and which the other witnesses testified was left in his wagon covered up by the seed cotton that night.

George Matthews, the sheriff, testified that on said morning after the theft of the cotton Friday night, he was called to the scene and went to the field where Hodge had cotton in his wagon. He confirmed, by his testimony, the buggy, mule, horse and colt's tracks as identified and described by Hodge. That there was loose cotton scattered between Hodge's wagon and where the buggy and animals had been stopped. He went to the empty house on the Tucker place and described about finding the loose locks of cotton therein that Hodge testified about; that the tracks of the horse looked as if the horse might have been shod in front; the ground in the field was soft and the tracks were fairly distinct, but were such tracks as could be made in that kind of ground by an unshod horse whose feet were not worn or jagged. The horse's tracks, however, showed that it had on shoes on the front feet. He never traced the buggy and horse tracks any further than the gap in the fence to the Tucker's place.

M. Rodriquez testified that on said Friday he went from Creedmore in his buggy, working a bay mare which had a colt about the same age of the Tucker mare's colt; that he returned home after dark between 8 and 9 o'clock, living near the Tucker's; that when he got to the gate going through Tucker's pasture he met Watt Tucker and Sam Brown and they held the gate open for him to pass through.

A. L. Hughes, for the State, testified about the tracks of the buggy and animals substantially as Hodge and the other witnesses had testified and about the man's tracks and the loose cotton back and forth from Hodge's wagon to where the buggy had been stopped and also the tracks of the buggy and animals up to the empty house on the Tucker place.

The appellant, himself, testified denying stealing the cotton and denying in effect all of the testimony of the State incriminating him. He and his father, brothers and sisters, a number of them, testified to such facts if believed would have established an alibi for him; that he was at home continuously from before sundown through the whole night and was not away from the place during that night.

Appellant also introduced much testimony showing that others in the same community had horses, colts and mules of about the same size, age, etc., as the Tucker gray mare and her colt and mules, and that there were numerous buggies in the community.

Appellant requested some fifteen special charges, seven of which were given and the others refused. Proper bills were saved to those refused. The appellant did not request any charge on alibi, such as

are usually given, when given at all, by the court; but his said several charges on that subject were of specific facts, such as, in one, "if they believed he loaded his wagon with seed and went to bed and stayed in his room and did not go and steal the cotton, or if they had a reasonable doubt of it to acquit him." In another, that if he was at home, at the time the cotton was stolen, if it was stolen, or if they had a reasonable doubt of it to acquit him.

The court charged on circumstantial evidence. He also in the main charge required the jury to believe beyond a reasonable doubt that the appellant, as charged in the information, fraudulently took from the possession of Frank Hodge the property described therein without the consent of the owner with intent to deprive the owner of the value of the same and to appropriate it to his own use or benefit before they could find him guilty; also the reasonable doubt as to the whole case. Then, instead of giving appellant's two special charges above noted, he gave this special charge at his instance: "If the jury believes from the evidence that anyone else and not this defendant stole said cotton, if it was stolen, or if you have a reasonable doubt as to this you will find this defendant not guilty."

It is the well established law of this State that when the question of alibi arises in a case, and the reasonable doubt in his favor is given, it is not necessary for the court to specially charge thereon, because in submitting, as was done in this case, that the jury could not find appellant guilty, unless they believed beyond a reasonable doubt that he fraudulently took the property, etc., necessarily includes alibi, unless a special charge on alibi is requested, and that when in addition to the submission of the question for the main finding as above stated, and the reasonable doubt, the court in effect requires the jury to believe that the appellant and no one else fraudulently took the property, etc., that the question of alibi is sufficiently submitted. Jones v. State, 53 Texas Crim. Rep., 131; Phillips v. State, 57 Texas Crim. 160. It is our opinion that, taking the main charge of the court as above stated requiring the jury to believe beyond a reasonable doubt that the appellant fraudulently took the cotton as charged in the information, and then gave the special charge above quoted which was requested by appellant, and the reasonable doubt, that the question of alibi is sufficiently and clearly covered and that no error was committed by the court in refusing the two special charges above mentioned.

By another special charge requested which was refused, appellant picked out a certain isolated fact that if the jury believed that the person who stole said cotton, if it was stolen, had a horse with shoes on and appellant did not own or drive a horse with shoes on, to acquit him. This was sufficiently and clearly embraced in the submission of the case under the main charge of the court and those given at the appellant's request. It would be improper to pick out isolated facts and charge the jury that if they found that particular fact a

certain way to acquit him, but the whole case must be properly submitted upon all the evidence as was done in this case.

By some bills and special refused charges appellant raised this question: The State was permitted to prove that when the particular sack of said woman was found in the Tucker old vacant house to which the buggy tracks had been traced and which showed that cotton had been placed in and removed therefrom, and which was the same sack that she had picked cotton in for Hodge the day before and had been placed in his wagon and covered up with the seed cotton and from which wagon the cotton had been stolen and said sack taken the night before, that this particular sack was mixed up promiscuously with several others, the woman sent for and she came, and upon being asked if she could pick out and identify her said sack from the others, she stated that she could and did do so, which said sack was produced and identified by the witnesses on the trial of this cause, claiming that this was improper and irrelevant because at the time she was sent for and was requested to pick out and identify her sack from the others and did do so, the appellant was not present and not bound thereby. The bills and charges raising this question are very general and do not sufficiently and specifically give the facts so as to show this court whether or not the said testimony was inadmissible; but conceding that the bills and charges are sufficient, this evidence does not present reversible error, because if for no other reason the appellant himself introduced the said woman as a witness and voluntarily proved in full the same facts that he objected to the State proving by other witnesses. It is an established rule that under such circumstances such question does not present reversible error.

By one bill appellant shows that after the State and he had rested, the State called Lawrence McKinley in rebuttal and over his objections the witness testified that: "I was at John Williams' house the night Sam Brown and Watt Tucker came there; they came between 8 and 9 o'clock; we sat out on the ground. Sam wanted me to go to Creedmore the next day. Sam Brown told me that he had seen the Tucker boys, Matthew and Sam, with some cotton that night. . . . The defendant was not there." He objected to said testimony as hearsay, prejudicial, being remarks of other persons and not binding on him, not in rebuttal and was irrelevant and immaterial. The court, in approving the bill, qualified it by stating "this testimony was admitted for the purpose of impeaching the testimony of the witness Watt Tucker."

This bill is very general and does not give the court the facts sufficiently to show that the testimony was erroneously admitted. He accepted the bill with the qualification of the court and, as qualified, it does not show error. We take it that the court's statement that it was admitted for the purpose of impeaching the testimony of Watt Tucker was true and we can readily see how it was admissible for that purpose.

Another bill shows the same character of testimony of the witness Sam Brown and the objections thereto with the same qualification by the court. No error is shown thereby.

By a special charge appellant requested that the said testimony of said Sam Brown be not considered for any purpose. The court, after adding this to the charge, "save as to impeachment, if it does so impeach," gave it. Appellant complains that the court had no right to add to his special charge. However, he accepted it, and it was given at his instance with the qualification. There was no error in this. The statute, Code Criminal Procedure, article 737 (717), on the subject of giving or refusing the charges that are asked, says: "The court shall either give or refuse these charges with or without modification."

We have carefully gone over all of appellant's other complaints and in our opinion no reversible error is shown. The evidence would have justified the jury to have found the appellant not guilty. Clearly it did justify the jury in finding the appellant guilty. There being sufficient testimony on either side and the jury having solved it against appellant, we can not disturb the verdict on that account.

When this record was first presented to this court and the case submitted, the statement of facts in its original form only, was sent up. It was not contained in the record and covered by the certificate of the clerk. Upon a proper showing, however, the appellant was awarded a certiorari to have this defect cured, he making such a showing at the time as to justify the court in doing so. However, it presents an important question of practice and raises the question of whether or not this court should consider the statement of facts as it was filed in, and still remains on file with, this cause. The statement in several pages has many vacant spaces therein. There are many interlineations and additions in long-hand to the statement of which the body is typewritten. On one page in one of the small blank places there is pinned with ordinary pins a loose page about the middle of the page, of closely typewritten matter which of itself would make more than one full page of ordinary typewriting. It is in different colored ink from that of the body of the statement of facts. In other places here and there are pasted strips on which is typewritten matter in a different ink from the body of the statement. In some of the long-hand matter that is interlined and added from place to place, it appears to have been first written with pencil then attempted to be traced with pen and ink. Some of the interlineations are in pencil still—others are in ink. There are still other little strips of typewritten matter in a different ink from that of the body of the statement of facts pinned on the edges of some of the sheets, which, when folded, cover up a part of the original statement. They are pinned on loosely with an ordinary pin. Other added matters in different colored ink are pasted on the sheets.

Such a statement made up in this way, even for the lower court, is

in violation of all the rules on the subject, and we have grave doubts of whether such a statement, when the facts are brought to the knowledge of the court, should be considered at all and our considering them in this case shall not be a precedent for the consideration of such a statement of facts hereafter in any other case. It was shown to us in this case that the condition of this statement of facts was brought about by the fact that the county attorney who tried the case in the court below died before this statement was acted upon by the county attorney's department and the county judge. There is no intimation by this court that the statement of facts has been improperly tampered with. We are satisfied from the showing made to this court that such is not the fact. It is probable, however, that if the State had made a motion to strike out the statement of facts and not consider it because of its condition that this court would have sustained it. We state all this so as to call attention of the lower courts to such matters so that in the future statement of facts will be so prepared as to comply with the rules and thereby prevent, even the semblance of such matter as might raise a suspicion of the correctness and validity of a statement of facts.

The judgment will be affirmed.

*Affirmed.*

[Rehearing denied October 16, 1912.—Reporter.]